**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES *ex rel.* | ) | |
| | ) | |
| HEATHCOTE HOLDINGS CORP, INC., | ) | |
| An Illinois Corporation, Relator | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No.  11-cv-3889 |
| v. | ) | |
| | ) | |
| OXO INTERNATIONAL LTD., and | ) | |
| HELEN OF TROY, LTD. | ) | |
| | ) | |
| | ) | |
| Defendants. | | |

**COMPLAINT FOR FALSE PATENT MARKING**

Relator, HEATHCOTE HOLDINGS CORP., INC., ("HEATHCOTE"), by its attorneys, hereby complains against Defendants OXO INTERNATIONAL LTD. and HELEN OF TROY, LTD., as follows:

## I. NATURE OF THE CASE

1.      This is a *qui tam* action on behalf of the public for false patent marking under 35 U.S.C. § 292.

2.      In part, § 292 provides:   "[w]hoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the same is patented for the purpose of deceiving the public . . . [s]hall be fined not more than $500 for every such offense."

3.      The Federal Circuit has held that the term "unpatented article" "means that the article in question is not covered by at least one claim of each patent with which the article is marked." *Clontech Labs., Inc. v. Invitrogen Corp.,* 406 F.3d 1347, 1352 (Fed.Cir.2005).

4.      The Federal Circuit has also held that Section 292 applies to "falsely marked products with inapplicable patent numbers and expired patent numbers." *Pequignot v. Solo Cup Co.*, 608 F.3d 1356, 1362 (Fed. Cir. 2010).

5.      35 U.S.C. § 252 provides that "[t]he surrender of the original patent shall take effect upon the issue of the reissued patent."

6.      When a patent is surrendered, a patentee no longer has any valid or enforceable rights related to the surrendered patent, except, as provide by 35 U.S.C. § 252, to "any action then pending . . . or existing . . . to the extent that [the reissued patent's] claims are identical with the original patent."   A search of Pacer.gov demonstrates that Defendants did not have any pending patent infringement claims at the time the subject patents were reissued.

7.      A surrendered patent constitutes an "inapplicable patent" for the purposes of § 292.

8.      A product marked with a surrendered patent constitutes an "unpatented article" for the purposes of § 292.

9.      A product marked with a surrendered patent violates § 292, if the Defendant marked the subject product with the surrendered patent "for the purpose of deceiving the public."

## II.  **THE PARTIES**

10.      HEATHCOTE is an Illinois corporation with its principal place in Evanston, Illinois 60202.

11.      Defendant OXO INTERNATIONAL, Ltd. is a Texas Limited Partnership, with its principal place of business at 1 Helen of Troy Plaza, El Paso, Texas 710012.

12.      Defendant HELEN OF TROY, Ltd. is a Texas Limited Partnership, with its principal place of business at 1 Helen of Troy Plaza, El Paso, Texas 79912.

130107572v1  0920454  57483

### III. JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

14.    Venue properly lies in the Northern District of Illinois pursuant to 28 U.S.C. §§ 1391(c), and 1395(a), because the below identified marked mixing bowls and tea kettles were and are offered for sale and sold in this District.

15.    This Court has personal jurisdiction over Defendant OXO because it has sold and continues to sell falsely marked mixing bowls and tea kettles, in Illinois and in this District and/or in the stream of commerce with knowledge that the subject products would be sold in Illinois and in this District.  Defendant OXO's sales of the subject products in this district are substantial, continuous, and systematic, as evidence by the sale and purchase of the subject mixing bowls and tea kettles at retailer Bed Bath and Beyond in June of  2011.

16.    This Court has personal jurisdiction over Defendant Helen of Troy because it is the assignee of the patents in question and because Defendant Helen of Troy was aware of the reissuance of the subject patents.  On information and belief, as detailed below, Defendant Helen of Troy knew of and condoned Defendant OXO's violation of Section 292.

### IV. THE SUBJECT PATENTS

#### A.  United States Patent no. 6,431,389

17.    United States patent no. 6,431,389 was issued on August 13, 2002.  A copy of patent no. 6,431,389 is attached Exhibit A.

18.    United States patent no. RE 39,391 is a reissue of Patent no. 6,431,389.

19.    United States patent no. RE 39,391 was issued on November 14, 2006.  A copy of RE 39,391 is attached as Exhibit B.

20.     Defendant Helen of Troy is the assignee of patent no. RE 39,391.  Previously, a company affiliated Defendant OXO was the assignee of patent no. RE 39,391.  On or about June 1, 2004, Defendant Helen of Troy purchased the rights to the subject patents.

21.     Defendant Helen of  Troy was involved in applying for an securing reissuance of patent number 39,391.

22.     On information and belief, Defendant OXO was involved in applying for and securing reissuance of patent number 39,391.

23.     On information and belief, attorneys who were employed by both Defendant OXO and Defendant Helen of Troy applied for and secured the reissuance of patent number 39,391.

24.     Alternatively, Defendant OXO was aware that Defendant Helen of Troy had applied for and secured the reissuance of patent number 39,391.

25.     As a matter of law, United States patent no. 6,431,389 was surrendered on November 14, 2006 based upon the issuance of United States patent no. RE 39,391.

26.     After United States patent no. RE 39,391 was surrendered on November 14, 2006, Defendants no longer had any valid or enforceable rights related to patent no. 6,431,389.

27.     Shortly after November 14, 2006, Defendants were informed that patent no. RE 39,931 was issued.

28.     Alternatively, on information and belief, Defendants know and/or were informed that patent no. 6,431,389 was surrendered on November 14, 2006, when patent no. RE 39,931 was issued.

29.     After patent no. 6,431,389 was surrendered, Defendant OXO continued to mark the subject mixing bowls patent no. 6,431,389.

4

30.     To date, Defendant OXO has not marked the subject mixing bowls with patent no. RE 39,931.

31.     In continuing to mark the subject mixing bowls with patent no. 6,431,389, Defendant Oxo violated 35 U.S.C. §292(a) because no reasonable entity in Defendant Oxo's position could have believed that it was proper to mark patent no. 6,431,389 on the subject products after it was surrendered.

32.     Because no reasonable entity in Defendant Oxo's position could have believed that it was proper to mark patent no. 6,431,389 on the subject mixing bowls after it was surrendered, it is plausible to allege that intended to deceive the public and competitors into believing that the subject products were protected by patent no. 6,431,389.

33.     Defendant Helen of Troy knew of and condoned Defendant OXO's conduct.  No reasonable entity in Defendant Helen of Troy's position could have believed that it was proper to mark patent no. 6,431,389 on the subject products after it was surrendered.    Accordingly, Defendant Helen of Troy's conduct violated 35 U.S.C. §292(a).

### B.  United States Patent no. 6,006,959

34.     United States Patent no. 6,006,959 was issued on December 28, 1999.  A copy of RE 6,006,959 is attached as Exhibit C.

35.     United States patent no. RE 39,431 is a reissue of Patent no. 6,006,959.

36.     United States patent no. RE 39,431 was issued on December 19, 2006.  A copy of RE 39,431 is attached as Exhibit D.

37.     Defendant Helen of Troy is the assignee of patent no. RE 39,431.  Previously a division and/or affiliated company of Defendant OXO was the assignee of patent no. RE 39,431. On or about June 1, 2004, Defendant Helen of Troy purchased the rights to the subject patent.

130107572v1  0920454  57483

38. Defendant Helen of Troy was involved in applying for an securing reissuance of patent number 39,431.

39. On information and belief, Defendant OXO was aware of and/or involved in applying for and securing reissuance of patent number 39, 431.

40. On information and belief, attorneys who were employed by both Defendant OXO and Defendant Helen of Troy applied for and secured the reissuance of patent number 39, 431.

41. Alternatively, Defendant OXO was aware that Defendant Helen of Troy had applied for and secured the reissuance of patent number 39,431.

42. As a matter of law, United States patent no. 6,006,959 was surrendered on December 19, 2006 based upon the issuance of United States patent no. RE 39,431.

43. After United States patent no. RE 39,431 was surrendered on December 19, 2006, Defendants no longer had any valid or enforceable rights related to patent no. 6,006,959.

44. Shortly after December 19, 2006, Defendants were informed that patent no. RE 39,431 was issued.

45. Alternatively, on information and belief, Defendant knows and/or was informed that patent no. 6,006,959 was surrendered on December 19, 2006, when patent no. RE 39,431 was issued.

46. After patent no. 6,006,959 was surrendered, Defendant OXO continued to mark the subject tea kettles with patent no. 6,006,959 and did not mark the subject tea kettles with patent no. RE 39,931.

47. In continuing to mark the subject tea kettles with patent no. 6,006,959, Defendant Oxo violated 35 U.S.C. §292(a) because no reasonable entity in Defendant Oxo's position could

130107572v1  0920454  57483

48.     Because no reasonable entity in Defendant Oxo's position could have believed that it was proper to mark patent no. 6,006,959 on the subject tea kettles after it was surrendered, it is plausible to allege that intended to deceive the public and competitors into believing that the subject products were protected by patent no. 6,006,959.

49.     Defendant Helen of Troy knew of and condoned Defendant OXO's conduct.  No reasonable entity in Defendant Helen of Troy's position could have believed that it was proper to mark patent no. 6,006,959 on the subject products after it was surrendered.     Accordingly, Defendant Helen of Troy's conduct violated 35 U.S.C. §292(a).

## V.  ADDITIONAL FACTS SUPPORTING DEFENDANT'S FALSE MARKING

50.     Defendants have applied for numerous patents.

51.     Defendant OXO believes that its consumers value patents.  This contention is demonstrated by the fact that OXO currently promotes certain patented items on its website.  For example, Defendant Oxo promotes patented measuring cups.   http://www.oxo.com/p-507-3-piece-angled-measuring-cup-set.aspx. (last accessed on June 6, 2011).

52.     Among other things, the webpage states:

> A *patented* angled surface lets you read measurement markings by looking straight down into the Cup and eliminates the need to fill, check and adjust the amount of liquid you are measuring.

> (Emphasis supplied, last accessed on June 6, 2011).

53.     Other third party websites which sell the subject tea kettles and mixing bowls promote the patented nature of the subject products. On information and belief, in the past, Defendant OXO's website promoted the patented nature of the subject products.

130107572v1  0920454  57483

54.     On information and belief, Defendant OXO has approved of other third party websites which promote the patented nature of the subject mixing bowls.

55.     Defendant OXO has been involved in at least six patent infringement lawsuits.

56.     Defendant Helen of Troy has been involved at least twelve patent infringement lawsuits.

57.     Defendant Helen of Troy is the parent company of Defendant OXO and purchased Defendant OXO in 2004.

58.     Defendant Helen of Troy is knowledgeable in the area of patents.  For example, Defendant Helen of Troy May 13, 2010 10-K report states: "Helen of Troy has filed or obtained licenses for over 500 design and utility patents in the United States and several foreign countries.  Most of these patents cover product designs in our Housewares segment, and over two-thirds of these are utility patents."

59.     Defendant Helen of Troy monitors and protects its brands against patent infringement.    For example, Defendant Helen of Troy's May 13, 2010 10-K report also states: "**We monitor and protect our brands against infringement**, as we deem appropriate . . . ." (Emphasis supplied).

60.     Defendant Helen of Troy believes that maintaining and gaining market share depends on patents.

61.     For example, Defendant Helen of Troy's May 13, 2010 10-K report also states:

> "**Maintaining and gaining market share depends heavily on** product development and enhancement, pricing, quality, performance, packaging and availability, brand name recognition, **patents**, and marketing and distribution approaches."

(Emphasis supplied).

8

62.     When Defendant Helen of Troy acquires patents from the purchase of other entities that it calculates the life of the patent.

63.     For example, Defendant Helen of Troy's May 13, 2010 10-K report also states:

> "**Patents acquired through purchase from other entities, if material, are recorded on our consolidated balance sheets based upon the appraised cost of the acquired patents and amortized over the remaining life of the patent**. Additionally, we incur certain costs, primarily legal fees in connection with the design and development of products to be covered by patents, which are capitalized as incurred and amortized on a straight-line basis over the life of the patent in the jurisdiction filed, typically 14 years."

(Emphasis supplied).

64.     Defendant Helen of Troy's May 13, 2010 10-K report also states:

> "**Other intangible assets include** customer lists, distribution rights, **patent rights** and non-compete agreements that **we acquired from other entities**. These are recorded on our consolidated balance sheets based upon the appraised cost of the acquired asset and amortized on a straight-line basis over the remaining life of the asset as determined either through outside appraisal or the term of any controlling agreements."

65.     When Defendant Helen of Troy acquired Defendant OXO in 2004, it allocated certain costs to the acquisition of OXO's patent portfolio.

66.     For example, Defendant Helen of Troy's May 13, 2006 10-K report states the following regarding the acquisition of OXO:

> **NOTE 4 . ACQUISITION OF TRADEMARKS AND OF RIGHTS UNDER LICENSE AGREEMENTS, CONTINUED**
> On June 1, 2004, we acquired certain assets and liabilities of OXO International ("OXO".) for a net cash purchase price of approximately $273,173,000 including the assumption of certain liabilities. The acquisition was funded through a combination of short-term and long-term debt as further discussed in Notes (5) and (6) to these consolidated financial statements. *In the acquisition, we recorded* goodwill of $165,388,000 (subsequently adjusted to $166,131,000), additional trademarks with indefinite useful lives (and thus not subject to amortization) of $75,200,000, *and other intangible assets totaling $17,1000,000 (subsequently adjusted to $18,3127,000). Other intangible assets are subject to amortization over varying lives ranging from 2 to 13 years and consist of patents,* customer lists and a non-compete agreement. These allocations reflect the completion of

9

our analysis of the economic lives of the assets acquired and appropriate allocation of the initial purchase price based upon independent appraisals. We believe that the OXO acquisition resulted in recognition of goodwill primarily because of its industry position, management strength, and business growth potential. See Note (16) for a further discussion of the OXO acquisition.

(Emphasis supplied).

67.     Defendant Helen of Troy's May 13, 2006 10-K report also states the following regarding the acquisition of OXO:

> **NOTE 16 . ACQUISITION OF OXO**
> On June 1, 2004, we acquired certain assets and liabilities of OXO International ("OXO.") for a net cash purchase price of approximately $273,173,000 including the assumption of certain liabilities. This acquisition was accounted for as the purchase of a business. The results of OXO's operations have been included in the consolidated financial statements since that date. The assets acquired in the OXO acquisition included intellectual property, contracts, goodwill, inventory and books and records. The assumed liabilities included contractual obligations and accruals, and certain lease obligations assumed in connection with OXO's office facilities in New York City. Thirty five OXO employees, including its President, joined the Company as part of the acquisition. OXO is a world leader in providing innovative consumer products in a variety of product areas. OXO offers approximately 500 consumer product tools in several categories, including: kitchen, cleaning, barbecue, barware, garden, automotive, storage, and organization. OXO also has strong customer relationships with leading specialty and department store retailers. **Each year approximately 90 products are introduced through the OXO Good Grips®, OXO Steel., OXO Good Grips i-Series®, and OXO SoftWorks® product lines**.
>
> The following schedule presents the net assets of OXO acquired at closing:
>
> **OXO. Net Assets Acquired on June 1, 2004**
> **(in thousands)**
>
> Finished goods inventories $ 15,728
> Property and equipment 2,907
> Trademarks 75,200
> Goodwill 165,388
> Other intangible assets 17,1000
> Total assets acquired 277,213
> Less: Current liabilities assumed (4,040)
> Net assets acquired $ 273,173

> ***The allocations above reflect the completion of our analysis of the economic lives of the assets acquired and appropriate allocation of the initial purchase price based upon independent appraisals***. We believe that the OXO acquisition resulted in recognition of goodwill.

> (Emphasis supplied).

68.  Defendant Helen of Troy invests money in patent development for household products.  For example, Defendant Helen of Troy's May 13, 2006 10-K report states:  "During fiscal 2005, we also invested an additional $374,000, in patent development costs primarily on behalf of our Housewares segment."

69.  Defendant Helen of Troy, by and through Seyfarth Shaw LLP, paid the 8th year maintenance fee for patent no. RE 39,431 on or about June 25, 2007.

70.  Defendant Helen of Troy, by and through Seyfarth Shaw LLP, paid the 12th year maintenance fee for patent no. RE 39,431 on or about May 27, 2011.

71.  Prior to the issuance of patent no. RE 39,431, Seyfarth Shaw LLP, paid the 4th year maintenance fee for patent no. 6,006,959 on or about March 4, 2003.

72.  Defendant Helen of Troy, by and through Seyfarth Shaw LLP, paid the 8th year maintenance fee for patent no. RE 39,391 on or about December 29, 2009.

73.  Prior to the issuance of patent no. RE 39, 391, Seyfarth Shaw LLP, paid the 4th year maintenance fee for patent no. 6,431,389 on or about August 29, 2005.

74.  The following individuals have knowledge of the subject patents, products and packaging:

    a.  Alex Lee, President.  Mr. Lee has oversight of the worldwide OXO business; strategic decisions regarding patent prosecution and maintenance, as well as broad conceptual design and packaging decisions for all OXO brand products.

b.      Stacie Wolfe, Art Director.  Ms. Wolfe has knowledge of OXO packaging design and patent marking.

c.      Michelle Sohn, Category Director.  Ms. Sohn has knowledge of product design, marketing, decisions relating to patent prosecution and maintenance.

d.      Michael Delevante, Category Director.  Mr. Delvante has knowledge of product design, marketing, decisions relating to patent prosecution and maintenance.

e.      Attorneys from Seyfarth Shaw LLP, including, but not limited to, Harold Stotland, have knowledge of the subject patents and the reapplication process for each. One or more of these attorneys informed one or both of the Defendants that patent no. 6,006,956 was reissued as patent no. RE 39,431 and that patent no. 6,431,389 was reissued as patent no. RE 39,391.

75.      Defendants, by and through one or more of the above individuals identified above in paragraphs 72(a)-(d) knew that patent no. 6,006,956 was reissued as patent no. RE 39,431 and that patent no. 6,431,389 was reissued as patent no. RE 39,391.

76.      Furthermore, Defendants, by and through one or more of the above individuals identified above, knew that patent no. 6,006,956 was reissued as patent no. RE 39,431 and that patent no. 6,431,389 was reissued as patent no. RE 39,391.

77.      Defendant OXO and Defendant Helen of Troy have procedures for tracking the payment of maintenance fees and for tracking the application, issuance and reissuing of  patents.

78.      As noted above, once the subject patents were reissued, maintenance fees were paid towards the reissued patents.

130107572v1  0920454  57483

79. For one more of the reasons noted above, Defendant Helen of Troy was aware of Defendant OXO's continued marking of the tea kettle products with patent no. 6,006,956 after patent no. RE 39,431 was reissued

80. For one more of the reasons noted above, Defendant Helen of Troy is aware of Defendant OXO's continued marking of the mixing bowl products with patent no. 6,431,389 after patent no. RE 39,391 was reissued.

81. For one or more of the above reasons, Defendants knew that patent no. 6,006,956 was no longer valid or otherwise enforceable based upon the reissue of patent no. RE 39,431.

82. For one more of the reasons noted above, Defendants knew that patent no. 6,431,389 was no longer valid or otherwise enforceable in a court of law based upon the reissue of patent no. RE 39,391.

83. Despite knowing these facts, one or more of the Defendants continued to mark the below identified tea kettles with patent no. 6,006,956 and the below identified mixing bowl products with patent no. 6,431,389.

84. Defendants, by and through one or more of the above identified individuals marked the below identified products identified with invalid or otherwise enforceable patents to deceive the public and competitors into believing that the subject products were protected by patent nos. 6,431,389 and 6,006,959

85. Defendants' intent to deceive is further manifested by the fact that despite being sued in other cases for violating Section 292, as of the filing of this Complaint, Defendants have taken no action(s) to remove patent no. 6,431,389 from the subject mixing bowls. Similarly, Defendants have taken no action(s) to remove patent no 6,006,956 from the boxes of the subject tea kettles.

130107572v1  0920454  57483

86.     In summary, Defendant OXO marked or caused the mixing bowls and tea kettles identified below in with the intent to deceive the public and competitors into believing that the subject products were protected by the above identified patents when the products were in fact not protected by these patents.

87.     Further, Defendant Helen of Troy was aware of and approved of Defendant OXO's conduct in marking the subject mixing bowls and tea kettles.  In doing so, Defendant Helen of Troy with the intent to deceive the public and competitors into believing that the subject products were protected by the above identified patents

88.     The decision to falsely mark the subject products was not a mistake.  Defendants did not negligently mark the subject products with inapplicable patents.

89.     Rather, the above facts demonstrate that Defendants are sophisticated companies with years of experience in patent applications, patent assignments, patent litigation and  reissued patents.

## VI.  COUNTS FOR FALSE MARKING

### Count One

90.     Plaintiff incorporates Paragraphs 1 through 89 as if fully set forth above.

91.     Based upon the above facts, Defendant OXO has violated 35 U.S.C. §292(a) by marking (or causing to be marked), the below identified product with patent no. 6,431,389 with the intent to deceive the public and competitors into believing that the subject product was protected by said patent number:

            Item Name:    3 Quart Stainless Steel Mixing Bowl
            Item #:       1059512
            SKU #:        19812-00762

92.     As set forth above, Defendant OXO knew that patent no. 6,431,389 was no longer valid or otherwise enforceable in a court of law after November 14, 2006, based upon the reissue of patent no. 39,391.

93.     Despite knowing this fact, after November 14, 2006, Defendant OXO marked, or allowed to be marked, the subject product with patent no. 6,431,389 with the intention of deceiving the public and competitors into believing that the subject product was protected by said patent number.

## Count Two

94.     Plaintiff incorporates Paragraphs 1 through 89 as if fully set forth above.

95.     Based upon the above facts, Defendant OXO has violated 35 U.S.C. §292(a) by marking (or causing to be marked), the below identified product with patent no. 6,431,389 with the intent to deceive the public and competitors into believing that the subject product was protected by said patent number:

> Item Name:    5 Quart Stainless Steel Mixing Bowl
> Item #:          1059511
> SKU #:          19812-00761

96.     As set forth above, Defendant OXO knew that patent no. 6,431,389 was no longer valid or otherwise enforceable in a court of law after November 14, 2006, based upon the reissue of patent no. 39,391.

97.     Despite knowing this fact, after November 14, 2006, Defendant OXO marked, or allowed to be marked, the subject product with patent no. 6,431,389 with the intention of deceiving the public and competitors into believing that the subject product was protected by said patent number.

## **Count Three**

98.     Plaintiff incorporates Paragraphs 1 through 89 as if fully set forth above.

99.     Based upon the above facts, Defendant OXO has violated 35 U.S.C. §292(a) by marking (or causing to be marked), the below identified product with patent no. 6,431,389 with the intent to deceive the public and competitors into believing that the subject product was protected by said patent number:

        Item Name:    1 ½ Quart Stainless Steel Mixing Bowl
        Item #:       1059513
        SKU #:        19812-00763

100.    As set forth above, Defendant OXO knew that patent no. 6,431,389 was no longer valid or otherwise enforceable in a court of law after November 14, 2006, based upon the reissue of patent no. 39,391.

101.    Despite knowing this fact, after November 14, 2006, Defendant OXO marked, or allowed to be marked, the subject product with patent no. 6,431,389 with the intention of deceiving the public and competitors into believing that the subject product was protected by said patent number.

## **Count Four**

102.    Plaintiff incorporates Paragraphs 1 through 89 as if fully set forth above.

103.    Based upon the above facts, Defendant Helen of Troy has violated 35 U.S.C. §292(a) by allowing the below identified product to be marked patent no. 6,431,389 with the intent to deceive the public and competitors into believing that the subject product was protected by said patent number:

        Item Name:    3 Quart Stainless Steel Mixing Bowl
        Item #:       1059512
        SKU #:        19812-00762

130107572v1  0920454  57483

104.     As set forth above, Defendant Helen of Troy knew that patent no. 6,431,389 was no longer valid or otherwise enforceable in a court of law after November 14, 2006, based upon the reissue of patent no. 39,391.

105.     Despite knowing this fact, after November 14, 2006, Defendant Helen of Troy allowed the subject product to be marked with patent no. 6,431,389 with the intention of deceiving the public and competitors into believing that the subject product was protected by said patent number.

<div align="center">

**Count Five**

</div>

106.     Plaintiff incorporates Paragraphs 1 through 89 as if fully set forth above.

107.     Based upon the above facts, Defendant Helen of Troy has violated 35 U.S.C. §292(a) by allowing the below identified product to be marked patent no. 6,431,389 with the intent to deceive the public and competitors into believing that the subject product was protected by said patent number:

<div style="margin-left: 2em;">

Item Name:     5 Quart Stainless Steel Mixing Bowl
Item #:        1059511
SKU #:         19812-00761
US Patent #:   6,431,389

</div>

108.     As set forth above, Defendant Helen of Troy knew that patent no. 6,431,389 was no longer valid or otherwise enforceable in a court of law after November 14, 2006, based upon the reissue of patent no. 39,391.

109.     Despite knowing this fact, after November 14, 2006, Defendant Helen of Troy allowed the subject product to be marked with patent no. 6,431,389 with the intention of deceiving the public and competitors into believing that the subject product was protected by said patent number.

130107572v1  0920454  57483

**Count Six**

110.    Plaintiff incorporates Paragraphs 1 through 89 as if fully set forth above.

111.    Based upon the above facts, Defendant Helen of Troy has violated 35 U.S.C. §292(a) by allowing the below identified product to be marked patent no. 6,431,389 with the intent to deceive the public and competitors into believing that the subject product was protected by said patent number:

        Item Name:    1 ½ Quart Stainless Steel Mixing Bowl
        Item #:        1059513
        SKU #:         19812-00763
        US Patent #:   6,431,389

112.    As set forth above, Defendant Helen of Troy knew that patent no. 6,431,389 was no longer valid or otherwise enforceable in a court of law after November 14, 2006, based upon the reissue of patent no. 39,391.

113.    Despite knowing this fact, after November 14, 2006,  Defendant Helen of Troy allowed the subject product to be marked with patent no. 6,431,389 with the intention of deceiving the public and competitors into believing that the subject product was protected by said patent number.

**Count Seven**

114.    Plaintiff incorporates Paragraphs 1 through 89 as if fully set forth above.

115.    Based upon the above facts, Defendant OXO has violated 35 U.S.C. §292(a) by marking (or causing to be marked), the below identified product with patent no. 6,006,959 with the intent to deceive the public and competitors into believing that the subject product was protected by said patent number:

        Item Name:    Pick Me Up Tea Kettle – Brushed (1.8 quart capacity)
        Item #:        1067281
        SKU #:         19812-014555

116.    As set forth above, Defendant OXO knew that patent no. 6,006,959 was no longer valid or otherwise enforceable in a court of law after December 19, 2006, based upon the reissue of patent no. 39,431.

117.    Despite knowing this fact, after December 19, 2006, Defendant OXO marked, or allowed to be marked, the subject product with patent no. 6,006,959 with the intention of deceiving the public and competitors into believing that the subject product was protected by said patent number.

## Count Eight

118.    Plaintiff incorporates Paragraphs 1 through 89 as if fully set forth above.

119.    Based upon the above facts, Defendant Helen of Troy has violated 35 U.S.C. §292(a) by allowing the below identified product with patent no. 6,006,959 with the intent to deceive the public and competitors into believing that the subject product was protected by said patent number:

        Item Name:    Uplift® Tea Kettle – Polished (2 quart capacity)
        Item #:       1059512
        SKU #:        19812-00762

120.    As set forth above, Defendant Helen of Troy knew that patent no. 6,006,959 was no longer valid or otherwise enforceable in a court of law after December 19, 2006, based upon the reissue of patent no. 39,431.

121.    Despite knowing this fact, after December 19, 2006, Defendant Helen of Troy allowed the subject product with patent no. 6,006,959 with the intention of deceiving the public and competitors into believing that the subject product was protected by said patent number.

## Count Nine

122.    Plaintiff incorporates Paragraphs 1 through 89 as if fully set forth above.

130107572v1  0920454  57483

123. Based upon the above facts, Defendant Helen of Troy has violated 35 U.S.C. §292(a) by allowing the below identified product with patent no. 6,006,959 with the intent to deceive the public and competitors into believing that the subject product was protected by said patent number:

> Item Name: Pick Me Up Tea Kettle – Brushed (1.8 quart capacity)
> Item #: 1067281
> SKU #: 19812-014555

124. As set forth above, Defendant Helen of Troy knew that patent no. 6,006,959 was no longer valid or otherwise enforceable in a court of law after December 19, 2006, based upon the reissue of patent no. 39,431.

125. Despite knowing this fact, after December 19, 2006, Defendant Helen of Troy allowed the subject product to be marked patent no. 6,006,959 with the intention of deceiving the public and competitors into believing that the subject product was protected by said patent number.

## Count Ten

126. Plaintiff incorporates Paragraphs 1 through 89 as if fully set forth above.

127. Based upon the above facts, Defendant Helen of Troy has violated 35 U.S.C. §292(a) by allowing the below identified product with patent no. 6,006,959 with the intent to deceive the public and competitors into believing that the subject product was protected by said patent number:

> Item Name: Uplift® Tea Kettle – Polished (2 quart capacity)
> Item #: 1059512
> SKU #: 19812-00762

130107572v1  0920454  57483

128.     As set forth above, Defendant Helen of Troy knew that patent no. 6,006,959 was no longer valid or otherwise enforceable in a court of law after December 19, 2006, based upon the reissue of patent no. 39,431.

129.     Despite knowing this fact, after December 19, 2006, Defendant Helen of Troy allowed the subject product to be marked patent no. 6,006,959 with the intention of deceiving the public and competitors into believing that the subject product was protected by said patent number.

## VII.  <u>RESERVED COUNTS</u>

130.     The Plaintiff incorporates and restates Paragraphs 1 through 84.

131.     The above identified products were offered for sale on Friday, June 3, 2011.

132.     The above identified products are intended to be a representative sample of products that are falsely marked with the subject patents.  Plaintiff intends to name additional products as they are identified.

## VIII.  <u>DAMAGES & INJUNCTIVE RELIEF</u>

133.     The Plaintiff incorporates and restates Paragraphs 1 through 127.

134.     Based upon the above facts, DEFENDANTS have violated 35 U.S.C. §292(a) by marking (or causing to be marked), the product identified in Counts One through Nineteen with intent to deceive the public and competitors.

135.     As set forth above, DEFENDANTS knew that marking their products with false patent statements was and is illegal under Title 35 United States Code.

136.     Each falsely marked product is a separate "offense" pursuant to 35 U.S.C. §292(a).

130107572v1  0920454  57483

137.     DEFENDANTS should be enjoined from selling and marketing any of the above products with the expired and invalid patents.

138.     DEFENDANTS should be assessed fine of up to $500 per offending item sold

139.     35 U.S.C. §283 affords Plaintiff a right to seek injunctive relief to preclude the further sale of the aforementioned falsely marked products.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against DEFENDANTS as follows:

(a)     A decree that DEFENDANTS have falsely marked products in violation of 35 U.S.C. § 292;

(b)     An award of monetary damages, pursuant to 35 U.S.C. § 292, in the form of a civil monetary fine of $500 per false marking "offense," or an alternative amount as determined by the Court, one half of which should be paid to the United States of America;

(c)     An accounting for any falsely marked products not presented at trial and an award by the Court of additional damages for any such falsely marked products;

(d)     Injunctive relief to preclude the further sale of products marked with the expired and invalid patents; and

(e)     Such other and further relief, at law or in equity, to which Plaintiff is justly entitled.

Respectfully submitted,

/s/ James C. Vlahakis

Attorneys for Plaintiff
HEATHCOTE HOLDINGS CORP, INC.

James C. Vlahakis
HINSHAW & CULBERTSON, LLP
222 N. LaSalle Street, Suite 300
Chicago, Illinois  60601
Telephone:  (312) 704-3000
FAX:  (312)704-3001
jvlahakis@hinshawlaw.com

22

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure Rule 38, Plaintiff hereby demands a jury trial on all issues triable by jury.


/s/ James C. Vlahakis

Attorneys for Plaintiff
HEATHCOTE HOLDINGS CORP, INC.

James C. Vlahakis
HINSHAW & CULBERTSON, LLP
222 N. LaSalle Street, Suite 300
Chicago, Illinois  60601
Telephone:  (312) 704-3000
FAX:  (312)704-3001
jvlahakis@hinshawlaw.com

130107572v1  0920454  57483

## <u>CERTIFICATE OF FILING</u>

I hereby certify that on May 7, 2011, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system.


Respectfully submitted,


By: <u>/s/ James Vlahakis</u>

James C. Vlahakis
HINSHAW & CULBERTSON LLP
222 North LaSalle Street, Suite 300
Chicago, IL 60601
312-704-3000
jvlahakis@hinshalaw.com